UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN KISTLER,<br><br>         Plaintiff,<br><br>    v.<br><br>CABLECOM, LLC, et al.,<br><br>         Defendants. | Case No. 21-cv-08258-VC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 19 |

The motion to compel arbitration on an individual basis is granted. Courts faced with a motion to compel arbitration generally must decide two issues: whether the parties agreed to arbitrate and, if so, whether the agreement covers their present dispute. *Chiron Corporation v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

The party seeking to compel arbitration "must prove the existence of a valid agreement by a preponderance of the evidence." *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1219 (9th Cir. 2019). CableCom has met its burden. Its human resources director declares that the company "adopted an arbitration program" in December of 2018 and that, at the start of 2019, CableCom presented arbitration agreements to its current employees, including the plaintiff, Ryan Kistler. The agreement covers "any claims or disputes that the Company may have against You or that You may have against the Company." A digitally scanned copy of the paper agreement shows Kistler's signature beneath an attestation that he has read and understands the agreement and that he (and CableCom) are "agreeing to arbitrate claims covered by this agreement." The signature is dated January 15, 2019. CableCom has, on this record, proven the existence of an agreement to arbitrate.

Kistler asserts that he does not "recall signing any agreement to arbitrate my claims, including at any time in January 2019, when I had already been employed for several months." But his declaration does not change the outcome. Even if Kistler does not remember signing the agreement, the scanned copy shows his signature, which matches the signature that appears on the other human resources documents Kistler completed upon starting at CableCom. Absent a clearer indication that Kistler did not, in fact, sign the contract, it remains more likely than not that the parties agreed to arbitrate.

Kistler points to *Ruiz v. Moss Brothers Auto Group, Inc.*, in which a California court of appeals found that a company failed to present enough evidence to infer that "the electronic signature" on an arbitration agreement "was the act" of the plaintiff. 232 Cal.App.4th 836, 844 (Cal. Ct. App. 2014). But that case focused on the perils and uncertainties associated with electronic signatures, which could be placed absent authorization were someone to gain access to a person's computer or digital files. The agreement today involves a handwritten signature—one that matches the plaintiff's signature on other documents. Kistler, in any event, does not challenge that his signature appears on the arbitration agreement.

Nor did CableCom waive its ability to enforce the agreement. Kistler argues that because CableCom failed to turn over Kistler's signed arbitration agreement during initial discovery disclosures in March 2021—and instead waited until November—it thereby waived its right to enforce the agreement. Waiver is the "intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). To meet the "heavy burden" of arguing waiver in the arbitration context, a party must show "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration." *Britton v. Co-op Banking Group*, 916 F.2d 1405, 1412 (9th Cir. 1990). Even if CableCom knew of Kistler's arbitration agreement in March, it did not act "inconsistent" with that right. CableCom's human resources director has explained that the company neglected to turn over the agreement "solely due to an inadvertent mistake." Kistler also fails to show how the company's delay prejudiced him. CableCom has not, for instance, sought favorable rulings

from the Court during the interim period, and nothing in the record suggests that its mistake created a hardship.

      Kistler also argues that the agreement is unconscionable under California law. But the agreement itself expressly delegates to an arbitrator the "exclusive authority to resolve any dispute relating to the . . . unconscionability . . . of this Agreement, including, but not limited to any claim that all or any part of this Agreement is void or voidable." "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 69 (2010). Where an agreement delegates certain decisions to the arbitrator, "courts must first focus on the enforceability of that specific provision, not the enforceability of the arbitration agreement as a whole." *Brice v. Haynes Investments, LLC*, 13 F.4th 823, 827 (9th Cir. 2021). Kistler does not argue that the delegation provision *itself* is unconscionable, so it is for the arbitrator to decide in the first instance whether his unconscionability arguments about the rest of the agreement hold water.

      That leaves the question whether to order arbitration on an individual or classwide basis. The agreement provides a plain answer: "The Company and I agree to bring any claim on an individual basis." It expressly waives "any right for any dispute to be brought, heard, decided or arbitrated as a class action." Kistler contends that class arbitration bans are unconscionable. But the ship on such arguments has sailed. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011).

      The motion to compel arbitration on an individual basis is granted and the case is dismissed without prejudice. *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073–74 (9th Cir. 2014).

      **IT IS SO ORDERED.**

Dated: January 26, 2022

                                              VINCE CHHABRIA
                                              United States District Judge